Proceeds of case for B.T. Trucking v. Workers' Compensation Commission, 5100377. Counsel, please. Good morning, Your Honors. If it please the Court. My name is Donna Leary. I represent the appellant, B.T. Trucking. We have filed an appeal from the proceeding of the commission that found that a truck driver named Roger Clendenin, who was an independent owner-operator, was an employee of B.T. Trucking for the purposes of determining whether he was eligible for workers' compensation under the Illinois Workers' Compensation Act. The standard for determining whether or not Mr. Clendenin was an employee is the manifest way to the evidence. The Illinois Supreme Court, in a case called Roberson v. The Industrial Commission, promulgated a factor test for determining whether truck drivers who are owner-operators are employees for the purposes of the Illinois Workers' Compensation Act. And we've touched on all of those factors in our brief. The factors were whether the employer has control, whether the employer dictates the person's schedule, whether the person is paid hourly, whether income tax is withheld, whether Social Security is withheld, whether the employer may discharge the person at will, whether the employer supplies material and equipment, whether the employer's business encompasses the person's work. There was a large amount of facts heard by the Industrial Commission and then reviewed by the Circuit Court. I've gone through all of those facts in my brief. Mr. Clendenin's attorney has responded to that in his brief. But I wanted to just focus today on one of those facts, because I think one of those factors, because I think the commission has determined the law somewhat and has considered evidence with regard to that factor that it shouldn't have considered or shouldn't have considered it in the manner that it did. And once I think those facts were taken away, I think the evidence is clear that Mr. Clendenin was not an employee. And that's the control factor. In Roberson, the Illinois Supreme Court says that control of the alleged employee's work is the most important factor. Circuit Court agreed with that. In fact, the Industrial Commission found that control. Circuit Court affirmed basically on the basis of the control factor. What case best supports your position? For? Control. For control. The reason that we say that the evidence that they're relying on does not support control is that the evidence that they have of control are all fulfillments of requirements by the ICC of ICC requirements that we control our independent owner contractors. In Illinois, there's something called logo liability. And that is the ICC promulgates all of these regulations and says that trucking companies that license owner operators have to do all sorts of things. They have to put their logo and their ICC number on the truck. They have to make sure that those... And then they have to affirmatively manage those independent owner operators. I wonder why. Because in the 50s, there was a fad for hiring all of the... They cut loose their fleets, basically. Turned all their truckers loose, got rid of all of their trucks, and just sort of said, we're not responsible for the safety of trucks that we don't own. And there were accidents involved in which, you know, trucks, construction trucks, hauling trucks, freight trucks, hit passengers, people just driving down the road. And when they came back and tried to promulgate responding at superior liability against the trucking company, they said they're owner operators. We don't control them. And under the common law, they were owner operators. They didn't control them. There was no responding at superior liability. And there was no way to make sure that all of these little one-man operations were following the ICC regulations because there were hundreds of them. So what the ICC came in and did and said is, you, trucking company, you, freight carrier, you have an ICC license. We're going to make you responsible for policing all of these little one-man independent operations. So that if you have a little one-man guy that's working for you, or a five-truck guy, but all of these little guys that you are licensing to haul your freight or your dirt for your construction jobs or whatever, we're making you responsible for making sure that they comply with ICC regulations. So coming to the case, your argument in essence is, look, yeah, there are some requirements here, but these are requirements imposed by the law. Yes. Therefore, the control isn't really exercised by BTP. It's really exercised by the law, ergo he's really not our employee. And that's a very plausible argument except for one thing I want you to address specifically. Sure. I think your biggest problem is personally with the handbook that BTP gives the claimant that requires the drivers to quote-unquote comply at all times with company procedures and policies. It doesn't sound like comply with the law. That sounds like the company policies and procedures must be complied. How is that not creating an element of control? When you look at what the commission found that those policies were, that the company policies were, were that they required him to weigh loads and to weigh them out by the axle. That's an ICC regulation. When you look at the company policy that the company has a right to, one of the things the commission found was the company had a right to interview any drivers he hired for his truck and to disqualify them. That's ICC regulations because that driver has to pass a drug test and he has to pass a physical. If you look at the idea that the company, one of the things the commission found was that the BT trucking had a right to inspect his tractor. Those tractors have ICC requirements and that's what they're looking at, complying. Can you maybe help us understand this industry a little bit better? Okay. BT is an ICC license carrier? Yes, it is. Okay. It has an ICC number. Yes, it does. It has an ICC number. Okay. Can Glen, Glendening, or Glendening Trucking, which is a business entity that the house tax is under, under that name, apparently the evidence suggested that, correct? Yes. Okay. Can they become an ICC carrier? They could become an ICC carrier to my knowledge, but he did not. And they are permitted under the ICC regulations to operate under someone else's ICC number. It is common, at least in southern Illinois, for small drivers to operate under someone else's ICC number. Trucking companies handle that differently. In some cases they say you can only use my ICC number when you're working on my jobs, and in some cases they say you can use my ICC number all the time as long as you're following me and our standards. In this industry, and there seems to be this controversy about, obviously, that we have here where we have found control, okay, and allegedly the contract and the agreement between the parties, I'm independent, I'm in here independent, blah, blah, blah. Isn't the real answer for BT to only contract with ICC licensed operators? That would be one solution, Your Honor. The problem is that independent truck drivers frequently only have a high school education. You're asking them to, if you're looking at sort of a policy perspective, what you're asking them to do is have a whole bunch of one-man operations for people who may or may not have even a GED or high school education to negotiate the ICC license number application process, which I'm not sure is going to be feasible for a lot of drivers. Being able to operate under someone else's ICC number and the ICC saying you police these people is a means for a lot of people who aren't necessarily the most bureaucratically sophisticated people to engage in this industry. Well, obviously the reason they let loose their fleets and their employees was an economic decision. Yes. Then maybe that just isn't feasible in today's world. I guess what I'm saying is that we... Certainly, Your Honor, but what I would say in response to that is that a lot of economic decisions are being made in this case. Roger Clendenin contracted as an independent contractor with BT Trucking and then filed his taxes as an independent contractor. He made an economic decision to engage in this industry. Having taken advantage of... He didn't have a choice to be an employee, though, right? He could not... As you say, the Fed started in the 50s and all these trucking companies, for the most part, they don't... Right. Now that the regulations have come in, there are trucking companies, including BT. To my knowledge, BT owns some of their own trucks and has some employees that they use sort of on a constant basis. And then they have other trucking independent contractors who they call in as they need them for loads. So he would have the option to go out and get a job as a truck driver if he can find one. There are people who hire fleet drivers, so it is available. Well, maybe these companies will start hiring more employees when these independent guys who don't get ICC license don't have work anymore. That's certainly a possibility, Your Honor. The other thing that I would say about that, though, is who... You're asking... You're imposing... But you're cracking social policy. You're imposing a burden that's not found in the law. There is case law out there now. There wasn't at the time that the Commission... Well, what you're saying... What you're saying... We have Overson, which is a Supreme Court case that we have to follow. It is a factor test, and they're saying, well, the most important factor is control. Yes. And what you're saying, well, the genesis of all this control is that ICC over here and their rules and regulations. Yes. And so it really is not really control. It's facial control, or it's imposed upon us by another set of laws. Yes. And what I would reply to that is that there is case law that was not available at the time that the Commission heard this case, but was available now. The Commission heard this case in 2009. In 2009, the First District came out with a case called U.S. Bank v. Lindsay, which considered whether the issue of LOGO liability made two drivers co-employees for the purposes of the Illinois Workers' Compensation Act. And in that case, the First District came down and said that LOGO liability, which is the application of these regulations to independent owner-operators to create respondeat, basically respondeat superior liability under Illinois law, does not make two drivers co-employees for the purposes of the Illinois Workers' Compensation Act. Here is the issue, though, that I don't want to gloss over. Your argument has some appeal. For example, if the handbook says you, owner-operator, have to comply with all ICC and IDOT regulations and policies, but doesn't it go well beyond that? No. Well, wait a minute. Claimant is free to hire his own employees, but the handbook and the parties' agreement impose significant restrictions. It is not on the claimant's ability to control his employees. For example, doesn't the agreement, while allowing the owner to hire these claimants, the claimant's employees can only drive loads for VTT's customers only if they, quote-unquote, have received clearance from the company? Is that an ICC regulation? That is VT Trucking making an effort to make sure that these drivers meet ICC regulations, that they have the proper license, that they have had the proper physical. Well, you could make that argument over every single requirement, couldn't you, that the ultimate exalted goal is to make sure that the employees comply with IDOT and ICC, and there could never be a case of him not being found to be an employee. Under that argument, correct? To be found not an employee? Yes. Okay. Your Honor, I think if in this case he is found to be an employee, that there is no case in which an independent owner-operator is not an employee under Illinois law. That if you say that all of the standards that are set forth in that handbook are implementations of ICC regulations that VTT Trucking is required to do under their ICC license. If applying those regulations to their independent owner-operators and affirmatively managing them the way the ICC requires them to do, if that creates control under Roberson, there is not a case in Illinois where an owner-operator is not an employee for the purposes of Illinois law. Well, that's an interesting argument, but it's not a question of law. It turns out a question of fact. To be totally candid with you, I think maybe hopefully all of us can agree, there is evidence in the record to suggest that the claimant was an independent contractor. There is other evidence, in fact, suggesting he was your employee. And so at the end of the day, isn't it really the issue for the commission to determine under the manifesto? Your Honor, I don't agree when they've considered evidence of control that only goes to these ICC regulations, which the first district in Lindsay said should not be considered. Well, we'll ask the opposing counsel about that. You know, you make that broad statement, but it's kind of back to what I said earlier, is that you said, well, there's just no way an owner-operator is not going to be considered an employee under that. If ICC regulations create control, yes. So you can be an owner and operator who is ICC licensed. Excuse me? You can be an owner-operator, you said, that could be ICC licensed. Yes, Your Honor. So that general statement you made isn't really accurate. Because you can be an owner-operator, ICC licensed, and you will not be under the work comp. In the hypothetical, you're positing yes, but that's not the case before the court. Thank you. We'll have time for rebuttal. Counsel, please. May it please the Court, Your Honors. My name is David Galante, I represent the Petitioner and Mr. Clenditt in this matter. We are asking that this Court affirm the commission decision as not being against the manifesto evidence. Counsel, somewhere in your discussion, not to interrupt, but could you tell us, I mean, Counsel has made a broad-sweeping statement that all of the policies and procedures in the handbook of DTT simply goes to enforcing and complying with ICC and IDOT regulations. Ergo, you can't be an employee because this is by law. So somehow tell us in your summary what specific elements go to control that are not controlled by the ICC or IDOT. Well, not that I'm an expert on the ICC, but if you look to the handbook, the things that I believe that are outside of the ICC is, for instance, the cleanliness requirement that's in the handbook, that it must be presentable, present in a business-like fashion. Furthermore, in the company handbook, there's a requirement to have a camera there, an accident reporting procedure that's company-specific. In other words, This ICC didn't require a camera or they require reporting. But you're saying the manner of that reporting might be controlled by BT? Yes, sir. What I'm stating is, if I understood the question correctly, is how does the employee handbook confer additional requirements? Right, right. So that is the idea. Right. And again, I'm not an expert on the ICC, and I apologize for that. However, it's not my understanding that there's a requirement to have it photographed, that that is BT Trucking's camera. And a number of other requirements, such as the maintenance requirement, that must go through BT Trucking. They can't go out there and willy-nilly maintain these vehicles through someone else. What about the hiring of employees? Doesn't BTT exercise control over that? Don't they have to sign off or approve before they drive the load? Don't they have to be approved by BTT? Absolutely. That goes to show that BTT has control over who's actually out there in their employee. What about their argument, well, wait a minute, okay? We want to have good employees so we can comply with ICC regulations. Well, her argument was that if you cannot find, in this case, that Mr. Clendenin was an independent contractor, there is no case that you could find an independent contractor. I respectfully disagree with that. As Justice Holder has pointed out, you could require that all of the people that are working for you have an ICC license. You could also not have an employee handbook that doesn't voice requirements on you in terms of your appearance and to conduct yourself in a business-like manner and to be clean. The handbook would simply say you have to comply with all ICC IDA regulations, period, wouldn't it? It could say that. It doesn't say that in this instant case. Furthermore, this isn't the case where you have an individual, Mr. Clendenin, that is out in the world working for a number of these employees. If you look at the record, he worked for BT Trucking. It wasn't- Exclusively? My understanding of the record is that's correct. Yes, Your Honor, that he did not work for anybody else. He was not prohibited, though, was he? No, there was a notice requirement. In this case, I agree with counsel's statement that Roberson is directly on point with this matter. This case, to me, is identical to Roberson. And with the factor test, yes, he was not prohibited from working for someone else, but the facts of the matter are he didn't. And I'm simply trying to show an example of how you could have an individual that was truly an independent contractor and not an employee, if he worked for a variety of employers. Let's say on his taxes in a given year, he had five different BT Truckings that he worked for. That would certainly go to him being an independent contractor, not being an employee. But those aren't the facts before this Court today. He actually worked solely for BT for a significant period of time, seven years, wasn't it? Yes, sir. Yes, sir. And again, going back to some of the factors that the Roberson Court looked at, control obviously being the most important part, one thing that I think is important is what is the least important part in the factor test, which is whether the taxes were taken. I mean, I think a fair reading of Roberson is that yes, it is a factor, but it's not a large factor as compared to control of the individual. In this particular case, the significant piece of the equipment was provided by BT Trucking. The Roberson Court, quoting Larson, said that control may be reasonably inferred when the employer owns a part of the equipment that is of considerable size and value. I can't think of anything being much larger than a trailer, and the trailers were owned by BT Trucking. Of course, the value may vary, but it's clear that that control can be at least somewhat inferred from the size of the piece of equipment that would be in there. Then that's, of course, opposing counsel's argument that in this industry, you just cannot have an independent contractor coming under the comp law. I think it's difficult, Your Honor, to be frank, but I think I gave an example where hypothetically it could be possible. But it makes it difficult with the size and the value of the equipment that's being given to these individuals to go haul all over the country. I agree with you. Another factor that the Roberson Court looked to in terms of whether someone was an employee or an independent contractor was the right to discharge. If you look at the employee handbook, BT had a right to discharge with five days' notice. That's as close to an instant right to discharge as you can possibly imagine. I think if you look at all the factors that were enunciated by and laid out by the court in Roberson, I think that this case is a case of commission. On the handbook, does it say discharge, language discharge? I'm not sure. I believe the terminology was, I believe it was discharge with five days' written notice. It's addressed in my brief, I know that. Oh, okay. Because if you're an independent contractor, you don't talk about discharge. I mean, normally that's an art, term of art for an employer, employee-related. It would be more of an at-will employment. Right. Whereas if you're an independent contractor's position, you would be talking about termination of the contract. Sure, but I think, again, that the five-day notice requirement is, it shows that this is basically an at-will employment. That's what's actually going on in this case. And subject to your questions, Your Honor, that's all I have. Thank you for coming. Thank you, Your Honors. The court has heard a lot about the employee handbook and about what's contained within the employee handbook, but I just wanted to point out to the court that the employee handbook is not, or the driver safety policy handbook, is not what controls the relationship between these parties. That is a document that BT Trucking gave to Roger Klendening, but that's not the controlling document. The controlling document in this case is the written contract that the parties signed. There is an independent contractor agreement for owner-operators that both parties signed. It's attached as part of my exhibits. And just to touch on a couple of issues that have come up, with regard to discharge or termination, the five-day termination is a termination of the contract that's on, I think, page two of the written contract. And what it says is that either party may terminate the agreement by written notice to the other. It puts them on the same footing. And it isn't quite, the reversing factor is whether the employee is at-will. Five days' written notice to terminate a contract by either party is very short notice, but that is very different from an at-will employment arrangement where you walk into your job at Hardee's and they say, get out, get your stuff and get out, and they fire you on the spot. Requiring written notice, requiring a five-day period before you can be terminated, is different from at-will employment. So that reversing factor doesn't apply in favor of an employee relationship. Did he have to accept the job from BT Truck? No, he did not. He had the right to select what jobs he wanted to haul. Did they have to give him a certain amount of business at any given point in time? No, they did not. So what's five days? They don't give him any business or he turns it all down. It's not five days, it's at-will. They can stop giving him business any time they want, and he can stop working for them any time he wants. Five days is a meaningless provision. But they cannot say, don't call us for work anymore, or we're not going to use you anymore under any circumstance without giving him notice. He still has to give them business. His only thing to do is shut up and not call them. That's all he's got to do. When they do call, say, I don't feel like driving a truck. Your Honor, if they have work available and are not offering it to him, and they didn't give him written notice, it's a breach of the contract, then I think you would have an action for breach of contract. Give it to one or the other. The other contractual issue that controls is that while there's been a lot said about what's in the policy about means of performance, the contract, as opposed to this sort of document that they just give him, says that the contractor, which is Roger Clinton, shall control the method, means, and manner of performing this agreement and is responsible to co-signers for proper performance of this agreement. And then it goes on to say that he shall ensure that the performance of the agreement is in accordance with the rules and regulations of the Illinois Commerce Commission and the Department of Transportation and any other federal or state regulatory agency. So they give him the safety manual, that sort of advice about what they want him to do, but that's not what the contract says. What the contract says is that he controls, Roger Clinton controls, the manner of performance under the contract. Thank you, Your Honors. Thank you, Counsel. Of course, we'll take the matter under advisement for this position.